UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JOSEPH REUBEN,

              Plaintiff,

         - against -

THE CITY OF NEW YORK *et al.*,

              Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-2728 (PKC) (RML)

PAMELA K. CHEN, United States District Judge:

Plaintiff Joseph Reuben brings this action *pro se* after he was stabbed while detained at the Rikers Island jail complex by another incarcerated individual.[1]  Named as Defendants are the City of New York (the "City"); the New York City Department of Correction (the "DOC"); a Rikers Island corrections officer named Phinazee Unique (#3987); and two other unidentified corrections officers.  Plaintiff alleges that Defendants violated his constitutional rights under 42 U.S.C. § 1983 ("Section 1983") by failing to protect him from the attack.

On December 4, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP") and dismissed the Complaint, (Dkt. 1), for failure to state a claim on which relief could be granted.  (Mem. & Order, Dkt. 5.)  The Court granted Plaintiff 30 days to file an Amended Complaint, (*id.* at 2, 6), which Plaintiff did, (Dkt. 6).[2]  For the reasons discussed below, Plaintiff's claims against the City and the DOC are dismissed, and the Court grants Plaintiff another 30 days

---

[1] For purposes of this Memorandum and Order, the Court assumes all factual allegations in Plaintiff's Amended Complaint are true.  *See Schlosser v. Kwak*, 16 F.4th 1078, 1081 (2d Cir. 2021).

[2] Plaintiff also filed motions requesting that the Court appoint counsel to represent him in this action.  (Dkts. 7, 8.)  The Court denied those requests without prejudice.  (1/13/2026 Dkt. Order.)

to file a Second Amended Complaint with additional factual information to support his claims against the remaining individual Defendants.

**BACKGROUND**

On April 20, 2023, at approximately 10:30 p.m., Plaintiff was attacked while he was detained pre-trial at the Anna M. Kross Center on Rikers Island, in Dorm West, 17 Lower. (Am. Compl., Dkt. 6, at ECF[3] 3–4.) Plaintiff was on his bed when a "mentally unstable inmate with a history of violence" threatened him and revealed three weapons hidden in the attacker's waistband. (*Id.* at ECF 4, 7.) Plaintiff was "getting ready to notify the officer who was stationed to that post, when suddenly [the] officer walked off her post without a relief from another officer." (*Id.* at ECF 4.) The inmate then "quickly proceed[ed] to attack [Plaintiff] with one of the weapons." (*Id.*) Plaintiff tried to flee "while yelling to get the officer['s] attention," and states that the officer could "visibly see the dorm and hear any loud noise[s] from where she was located." (*Id.* at ECF 4–5.) However, the officer "ignored what was happening." (*Id.* at ECF 5.) While trying to flee, Plaintiff fell, "and the inmate began stabbing [him] multiple times." (*Id.*)

Plaintiff states that he suffered "serious physical injuries" and "fear[ed] [he] would die." (*Id.*) He sustained six lacerations across his body, including his ribs and shoulders, and four of those lacerations required stitches. (*Id.* at ECF 4.) He also experienced "emotional distress, insomnia, paranoia, embarrassment[,] and humiliation," and has undergone psychiatric treatment. (*Id.* at ECF 4, 9.) Plaintiff seeks monetary damages. (*Id.* at ECF 9.) He claims that Defendants violated his constitutional rights by failing to protect him from the attack; he also claims that Defendants "facilitated weapons to be allowed in the unit." (*Id.* at ECF 5, 7.)

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

**LEGAL STANDARD**

The Court is required to dismiss any complaint brought IFP if the Court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *see also id.* § 1915A (requiring courts to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or employee of a governmental entity" and dismiss upon the same determinations).

When addressing the sufficiency of a complaint pursuant to 28 U.S.C. § 1915A, courts must "accept[] all of the facts alleged in the complaint as true and draw[] all inference in the plaintiff's favor."  *Schlosser v. Kwak*, 16 F.4th 1078, 1081 (2d Cir. 2021) (quoting *Harnage v. Lightner*, 916 F.3d 138, 140–41 (2d Cir. 2019)).  To avoid dismissal for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, so the Court reads a plaintiff's *pro se* complaint liberally and interprets it to raise the strongest arguments and claims that it suggests.  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) ("This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))).

**DISCUSSION**

Plaintiff sues pursuant to Section 1983 for alleged violations of his constitutional rights.[4] Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). In order for Plaintiff to maintain an action under Section 1983, (1) "the conduct complained of must have been committed by a person acting under color of state law," and (2) "the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Garcia v. City of New York*, No. 12-CV-4655 (MKB), 2013 WL 153756, at *2 (E.D.N.Y. Jan. 14, 2013) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

**I.      Claims Against the New York City Department of Correction**

For the reasons stated in the Court's prior Memorandum and Order, Plaintiff's claims against the DOC must be dismissed with prejudice because the DOC is not a suable entity. (*See* Mem. & Order, Dkt. 5, at 3–4); 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

**II.      Claims Against the City of New York**

To sustain a claim for relief under Section 1983 against a municipal defendant, such as the City, a plaintiff must show: (1) the existence of an official municipal policy or custom, and (2) that the policy or custom directly caused plaintiff's constitutional rights to be deprived. *See Monell v.*

---

[4] Plaintiff also states that he brings claims under 42 U.S.C. §§ 1981 and 1985. (Am. Compl., Dkt. 6, at ECF 5.) However, Plaintiff does not plausibly state claims under those statutes because (among other reasons) he does not argue, or allege any facts suggesting, that Defendants intended to discriminate against him based on race or any other status, which is required for actions brought under either statute. *See Reynolds v. Barrett*, 685 F.3d 193, 201–02 (2d Cir. 2012) (Section 1985 requires "racial, or perhaps otherwise class-based, invidiously discriminatory animus" (citation omitted)); *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022) (Section 1981 requires defendant's intent to discriminate on the basis of race (citation omitted)).

*Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019).

In the Amended Complaint, Plaintiff alleges that the City "maintains policies and implement[s] patterns and practices which are the driving force of the constitutional violations [he] suffered." (Am. Compl., Dkt. 6, at ECF 7.) However, Plaintiff does not state facts to support this legal assertion. (*See generally id.*) Therefore, Plaintiff has not alleged sufficient facts to establish liability on the City, and the claim against it is dismissed without prejudice. 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

## III. Claims for Failure to Protect

Plaintiff also names three corrections officers as Defendants. He alleges that they failed to protect him from an attack by an unidentified person who was also incarcerated at Rikers Island. (*See generally* Am. Compl., Dkt. 6.) Because Plaintiff was a pre-trial detainee at the time of the attack, (*id.* at ECF 4), the Court analyzes his constitutional claims under the Due Process Clause of the Fourteenth Amendment, which provides at least as many protections as the Eighth Amendment provides for post-conviction inmates, if not more, *Darnell v. Pineiro*, 849 F.3d 17, 29, 33 n.9 (2d Cir. 2017). *See also Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (describing the differences in how these Amendments apply and their standards for challenging conditions of confinement).

Under the Fourteenth Amendment, prison officials must "'take reasonable measures to guarantee the safety' of pretrial detainees, including measures to 'protect [them] from violence at the hands of other prisoners.'" *Kramer v. Dep't of Corr.*, 828 F. App'x 78, 79 (2d Cir. 2020) (summary order) (first quoting *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994); and then citing *Darnell*, 849 F.3d at 29). A pretrial detainee asserting a failure-to-protect claim must plead two elements: (1) an "objective" element, which requires showing that the risk of harm was sufficiently

5

serious, and (2) a "subjective" element, which requires showing that the officer knew or should have known of the risk of serious harm but acted with deliberate indifference to that risk. *See Darnell*, 849 F.3d at 29.

### A.      Objective Element: Risk of Serious Harm

To show that the risk of harm was sufficiently serious, a plaintiff can show "either a substantial risk of harm from a specific assailant or a more general risk of harm due to the conditions at the time of the attack," *Little v. County of Nassau*, 708 F. Supp. 3d 252, 264 (E.D.N.Y. 2023) (citation modified), "such as where 'a substantial risk of inmate attacks was longstanding, pervasive, [or] well-documented,'" *Dietrich v. County of Orange*, No. 19-CV-10485 (CS), 2020 WL 5209816, at *3 (S.D.N.Y. Sep. 1, 2020) (alteration in original) (quoting *Farmer*, 511 U.S. at 842).  In other words, "it does not matter whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Little*, 708 F. Supp. 3d at 264 (citation modified) (quoting *Farmer*, 511 U.S. at 843).

Plaintiff states that he was assaulted by a "mentally unstable inmate with a history of violence." (Am. Compl., Dkt. 6, at ECF 7.)  He further alleges that, at the time of the attack, the corrections officer on duty was "walk[ing] off her post without a relief from another officer" and ignored his calls for help as he was attacked, despite being in a position to see and/or hear Plaintiff. (*Id.* at ECF 4–5.)  While courts have rejected as insufficient failure-to-protect claims alleging that prison officials knew or should have known of the assaulting inmate's violent or dangerous tendencies, *see, e.g.*, *Smolen v. Brown*, No. 18-CV-7621 (KMK), 2020 WL 1233762, at *4 (S.D.N.Y. Mar. 13, 2020) (at motion-to-dismiss stage, bare allegation that assailant was known to be violent is insufficient to sustain an Eighth Amendment failure-to-protect claim), here, the Court finds that there was an additional risk of harm due to the conditions at the time of the attack— namely, Plaintiff's allegation about a corrections officer walking off their post without relief while

6

being in a position to see and/or hear Plaintiff being attacked.  (*See* Am. Compl., Dkt. 6, at ECF 4–5.)  This allegation tips Plaintiff's claim into cognizable territory.  *See Schlosser*, 16 F.4th at 1081 (requiring district court to draw all inferences in Plaintiff's favor); *Hill*, 657 F.3d at 122 (reminding district courts to construe *pro se* complaint liberally).  Thus, Plaintiff has sufficiently pled, albeit barely, the objective element of his Fourteenth Amendment failure-to-protect claim.

### B.       Subjective Element: Deliberate Indifference

To show that Defendants acted with deliberate indifference to the risk of substantial harm, Plaintiff must demonstrate that Defendants acted with "more than mere negligence."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Farmer*, 511 U.S. at 835); *Morales v. N.Y. State Dep't of Corr.*, 842 F.2d 27, 28 (2d Cir. 1988) ("[A] prisoner cannot base a federal civil rights action brought under 42 U.S.C. § 1983 on claims of a negligent failure of state prison officials to protect him from injury at the hands of another inmate.").  However, "a showing of an express intent to inflict unnecessary pain is not required . . . . A constitutional violation may be shown by proof of alternative degrees of intent, such as recklessness."  *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir. 1991) (citation modified).

Plaintiff states that the corrections officer on duty "walked off her post without a relief from another officer," and that he "yell[ed] to get the officer['s] attention" while being attacked, but that the officer "ignored what was happening," despite being located in a position where she could "visibly see the dorm and hear any loud noise."  (Am. Compl., Dkt. 6, at ECF 4–5.)  This Court has previously held that "[w]hile a corrections officer leaving his or her post may reflect poor judgment, it does not, without more, reflect 'deliberate indifference to inmate health or safety.'"  *Thompson v. Snortland*, No. 19-CV-4743 (PKC) (CLB), 2020 WL 2933540, at *4 (E.D.N.Y. June 2, 2020) (quoting *Elleby v. City of New York*, No. 14-CV-1436 (PKC) (JLC), 2014 WL 7242899, at *2 (S.D.N.Y. Dec. 16, 2014)).  Here, however, there is more: Plaintiff's allegation

7

that the officer who was leaving her post could hear and see the attack but ignored Plaintiff's cries for help. These allegations nudge Plaintiff's claim across the line from mere negligence to deliberate indifference. *See also Plunkett v. City of New York*, No. 10-CV-6778 (CM), 2011 WL 4000985, at *5 (S.D.N.Y. Sep. 2, 2011) ("[A] reasonable trier of fact could well conclude that [a corrections officer's] failure to be at his post at the critical moment was not 'mere negligence.' If DOC mandates that no officer abandon his post until relief arrives, for obvious safety reasons, then it would not be 'mere negligence' for a corrections officer to do what [the defendant] is alleged to have done. Whether there is such a policy remains to be discovered; that is why we have discovery.") Therefore, as with the objective element of Plaintiff's failure-to-protect claim, the Amended Complaint satisfies the subjective element of that claim, although minimally so.

### C. Personal Involvement

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Brandon v. Kinter*, 938 F.3d 21, 36 (2d Cir. 2019) (citation modified); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." (internal citations omitted)).

Here, although Plaintiff names three corrections officers as Defendants, he does not describe how each of them was personally involved in the alleged constitutional violation. In order for this case to proceed, Plaintiff must specify what each of the three individual Defendants did or failed to do that makes them liable for allegedly failing to protect Plaintiff from being assaulted by

8

the other inmate.  The Court grants Plaintiff leave to file a Second Amended Complaint with information about the personal involvement of each individual Defendant.

## CONCLUSION

For the reasons stated above, Plaintiff's claims against the New York City Department of Corrections are dismissed with prejudice, and Plaintiff's claims against the City of New York are dismissed without prejudice.  28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).  Because Plaintiff has not sufficiently alleged the conduct of the remaining three individual Defendants, the Court grants him leave to file a Second Amended Complaint **within thirty (30) days** to add allegations about what Defendants Phinazee Unique, John Doe, and Jane Doe **each** did or failed to do that makes them liable for failing to protect Plaintiff from the inmate attack.  If Plaintiff chooses to file a Second Amended Complaint, he should consider the following questions in deciding what allegations to add to that complaint:

- How was Defendant Phinazee Unique (#3987) personally involved in the alleged incident?

- How was Defendant John Doe personally involved in the alleged incident?

- Can Plaintiff provide a description of Defendant John Doe, including any identifying characteristics?

- How was Defendant Jane Doe personally involved in the alleged incident?

- Can Plaintiff provide a description of Defendant Jane Doe, including any identifying characteristics?

Plaintiff should also consider adding additional factual allegations to support his failure-to-protect claim, such as:

- What facts lead Plaintiff to believe that his attacker was "mentally unstable"?

- What facts lead Plaintiff to believe that his attacker had a "history of violence"?

- Had Plaintiff and the attacker ever interacted before the assault?

9

- Had Plaintiff, or anyone else Plaintiff is aware of, informed any corrections officers about the risk posed by the attacker?

- Had Plaintiff ever requested to be separated from the attacker prior to the attack?

- Is Plaintiff aware of prior attacks at Rikers Island that occurred under similar circumstances?

Plaintiff's submission must be captioned "Second Amended Complaint," and it must bear the same docket number as this Memorandum and Order, No. 25-CV-2728 (PKC) (RML).  Plaintiff is reminded that an amended complaint completely replaces all prior pleadings and must therefore stand on its own without reference to the previous complaints or other submissions.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore denies IFP status for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to Plaintiff and note the mailing on the docket.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: March 3, 2026
       Brooklyn, New York

10